# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## Johnetta Gordon v. Virginia Electric and Power Company.

### June 14, 1928.

Argued and submitted before Judge Holt took his seat.

1. Street Railways—*Action for Injury to Pedestrian—Contributory Negligence of Plaintiff—Pedestrian Stepping upon Track after Seeing Approaching Car—Case at Bar.*—The instant case was an action against a street railway by a pedestrian for personal injuries. There was a verdict and judgment in favor of the defendant, which the court refused to set aside as contrary to the evidence. Plaintiff testified that before she started to cross the street and railroad tracks she looked and saw the street car approaching abount 185 feet away; that she waited for some passing vehicles, and "then by the time I started to step across the car line, that is when the car hit me." It was not clear from plaintiff's responses whether she' meant to testify positively that she did not look again after she had first seen the car approaching, or whether she' meant to qualify this and say that at a later time she saw the lights from the car when it was nearer to her. In any event whether she paid no further attention to the car after first seeing it, or later observed it when it was closer to her, she nevertheless stepped on the track immediately in front of it, without again looking. The only other witness of the accident testified that there was nothing to prevent plaintiff from seeing the car had she looked to her left, and that the approaching car was about twenty feet from her just before she went on the track.

   *Held:* That plaintiff was guilty or contributory negligence, therefore the action of the court in overruling the motion to set aside the verdict was correct.

2. Street Railways—*Action for Injury to Pedestrian—Contributory Negligence of Plaintiff—Pedestrian Stepping upon Track after Seeing Car.*—If a pedestrian in full possession of his faculties, having observed the near approach of a street car, neglects to pay any further attention to it, but with nothing to obstruct his view, undertakes to cross the street in front of it, and is immediately struck, he is guilty of a clear neglect of duty in not assuring or reassuring himself that

he can cross the track in safety, and the fact that he is thus immediately struck is convincing proof that there was no last clear chance to save him, and therefore that his own gross negligence is the proximate cause of his injury.

3. CROSSINGS—*Duty to Look and Listen—Duty a Continuing One.*—The duty to look and listen before crossing a railroad track is a continuing one.

4. STREET RAILWAYS—*Crossings—Distinction between Collisions with Vehicles and Collisions with Pedestrians.*—When a collision impends between a street car and another vehicle the problem of both the motorman and the driver is far more difficult than when a collision impends between a street car and a pedestrian, the difference being that the pedestrian, in such an emergency, can generally find a safe place in which to remain, or in an instant he can step out of danger. A pedestrian, under such circumstances, knowing of the approach of the street car, with nothing to obstruct his view, and in possession of his normal faculties, can avoid the injury in most cases by stopping and by not taking the fatal step into obvious danger.   In most cases he can assure his safety by the exercise of the slightest care.

5. STREET RAILWAYS—*Ordinance Providing that at Street Intersections Pedestrians have Right of Way Over Vehicles—Duty of Pedestrian to Exercise Ordinary Care.*—A city ordinance provided that at street intersections pedestrians shall have the right of way over vehicles. The ordinance is a valid one, but it does not relieve the pedestrians of the duty to exercise ordinary care to protect themselves from injury.   Generally speaking, it means that at street intersections the drivers of vehicles shall not unreasonably impede the passage of pedestrians, and that between street crossings pedestrians shall not unreasonably impede the movement of vehicles.   It relieves neither of the duty to exercise proper care measured by the danger.

6. STREET RAILWAYS—*Ordinance Providing that at Street Intersections Pedestrians have the Right of Way Over Vehicles—Instructions—Case at Bar.*—In the instant case the court was asked to instruct the jury that at street intersections pedestrians have the right of way over vehicles.   It was unquestionable that there was a valid ordinance to this effect in effect at the time of the accident in the instant case, but it appeared from the evidence that plaintiff was guilty of contributory negligence.

   *Held:*   That while the instruction was correct as an abstract proposition, it was inapplicable in the instant case and would have been misleading under the facts of the case, and could have only confused the jury.

7. STREET RAILWAYS—*Injury to Pedestrian—Contributory Negligence of Plaintiff—Instruction as to the Alleged Negligence of Defendant—Case*

*at Bar.*—In the instant case, an action by a pedestrian against a street railway for personal injuries, an instruction was offered by defendant which directed the jury's attention to the alleged negligence of the defendant company (failure to stop the car or reduce its speed), and concluded with a direction to find for the plaintiff, if convinced of that negligence.

*Held:* That the court properly refused this instruction, because the contributory negligence of the plaintiff which defeats the action was manifest from her own testimony.

8. Street Railways—*Injury to Pedestrian—Evidence—Res Gestae—Harmless Error.*—In the instant case, an action by a pedestrian against a street railway for personal injuries, the plaintiff attempted to prove by a witness that the motorman of the street car asked what he had hit. The defendant moved to strike out this answer. The witness was then asked when the motorman asked that question, and this was his response: "After myself and two other fellows started to pull her up because we asked him to back back, and he seemed to be so nervous he could not back back, and we had to take and pull her out from under the car." Upon motion this evidence was stricken out, and it was claimed that it should have been admitted as part of the *res gestae.* From her own evidence it appeared that plaintiff had been guilty of contributory negligence.

*Held:* That if admitted, the evidence could not possibly have changed the result; therefore, its exclusion did not constitute reversible error, if indeed it was error.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Broudy & Broudy,* for the plaintiff in error.

*T. Justin Moore* and *Williams, Loyall & Taylor,* for the defendant in error.

Prentis, P., delivered the opinion of the court.

The plaintiff, Johnetta Gordon, was struck and

injured by a car of the Virginia Electric and Power Company, at the intersection of Martin street and Wilson road, while she was attempting to cross the track. There was a verdict and judgment in favor of the defendant.

[1] The plaintiff's first assignment of error is, that the court erred in refusing to set aside the verdict as contrary to the evidence.

There were only two witnesses who testified as to the occurrence, the plaintiff herself and a brother of her husband. There is a single track parallel with a macadam road known as the Wilson road, and the plaintiff was attempting to go directly across this track from Wilson road to Martin street. The distance from the walkway on Wilson road to the nearest rail of the street car track was twenty-five feet, eight inches. She testified that while she was on the western side of Wilson road, opposite Martin street, she looked and saw the car at Vine street, the next corner, about 185 feet away; that she waited for some passing vehicles, and, as she expressed it, "then by the time I started to step across the car line, that is when the car hit me." When asked how far over the street car track she had gotten before she was struck, she replied: "I had stepped over the first rail and that is the last thing I remember." Her other witness testified that there was nothing to prevent her from seeing the car had she looked to her left; that the approaching car was about twenty feet from her just before she went on the track; that the car made a proper stop, and only ran a few feet after striking her. There was a slight drizzling rain. It was between 6:30 and 7 o'clock in the evening, November 2nd, but the track was straight and there was nothing to intercept the view. They

also testified that they heard no gong or warning sounded.

An ordinance of the city of Norfolk was introduced, which reads: "At street crossings pedestrians shall have the right of way over vehicles except where traffic officers are stationed. Between street crossings all vehicles shall have the right of way over pedestrians."

These being the facts, the court gave the jury a single instruction, which reads: "The court instructs the jury that if they believe from the evidence that the plaintiff had an unobstructed view of the approaching car just before she went upon the track and was struck before she could walk directly across, she was guilty of contributory negligence and you shall find for the defendant."

Under the facts stated, there seems to be no fair doubt that the plaintiff was guilty of negligence which directly contributed to her injury, which bars her recovery. Her own testimony is slightly equivocal, in that it is not clear from one of her responses whether she means to testify positively that she did not look again after she had seen the approaching car at Vine street, or whether she meant to qualify this, and to say that she at a later time saw the lights from the car when it was nearer to her. The result would be the same in either event. Whether she paid no further attention to it after seeing it at Vine street, or later observed it when it was closer to her, and nevertheless stepped on the track immediately in front of it, without again looking, her negligence is equally apparent.

[2, 3] Where a pedestrian who knows of the approach of a car is thus injured and there is nothing to obstruct the view, the case is rare indeed when he can be permitted to recover.

*Reichenstein* v. *Virginia Ry. & Power Co.*, 115 Va. 862, 80 S. E. 564, was the case of a pedestrian who testified that she stopped when she reached the eastern rail of the track, to see how she could get across. This court said in this connection: "It is true she claims to have kept a constant lookout for cars, and that she did not see the colliding car until it struck her; but that was a physical impossibility. Some of her witnesses testified that the lighted car could be seen two squares away. Hence, if she looked she must have seen the car, and one step would have put her in a safe place; and if she did not look she was guilty of negligence."

*Springs* v. *Virginia Ry. & Power Co.*, 117 Va. 829, 86 S. E. 65, was another case of a pedestrian who was injured. He looked at a point twenty-five or thirty feet from the place at which he was struck, and without looking again went on the track and was immediately struck. It is said that the duty to look and listen is a continuing one, and "in the instant case, according to plaintiff in error's own showing, had he performed the duty of looking and listening for an approaching car, which the law imposed upon him, he could and would have seen the car that struck him in time to have kept off the railway tracks and thus have avoided the accident that caused the injuries he complains of."

*Derring's Admr.* v. *Virginia Ry. & Power Co.*, 122 Va. 517, 95 S. E. 405, was the case of a pedestrian who slipped on the track and was killed. There was a demurrer to the evidence, which was sustained, and a recovery denied. It is there said that: "It was his duty to see that the car had slackened its speed or stopped before going on the track in such close proximity to it."

In *Hendry* v. *Virginia Ry. & Power Co.*, 130 Va. 282,

107 S. E. 715, a pedestrian who had seen an approaching street car just after he left the curb, stepped on the track and waited for an automobile to pass without paying any further attention to the car, and this is there said: "One fundamental rule in this class of cases is that if a pedestrian in full possession of his faculties, having observed the near approach of a street car, neglects to pay any further attention to it, but with nothing to obstruct his view, undertakes to cross the street in front of it, and is immediately struck, he is guilty of a clear neglect of duty in not assuring or reassuring himself that he can cross the track in safety, and the fact that he is thus immediately struck is convincing proof that there was no last clear chance to save him, and therefore that his own gross negligence is the proximate cause of his injury."

*Murden* v. *Virginia Ry. & Power Co.*, 130 Va. 449, 107 S. E. 660, was also a case in which a pedestrian was injured in crossing a street car track, and the court in denying a recovery repeats the rule thus: "The duty to look and listen before crossing a railway track, which is imposed upon travelers upon a highway, continues as long as the occasion for the exercise of such duty continues, and if there is any point at which by looking and listening the person injured could have avoided the accident and he failed to do so, his contributory negligence defeats a recovery."

*Shuster* v. *Virginia Ry. & Power Co.*, 144 Va. 387, 132 S. E. 185, is another case in which a pedestrian was injured under circumstances quite like the case we are considering. The plaintiff there testified that when he was on the sidewalk he looked and did not see any car; that he then walked across the street and on the track and was struck. He testified that he looked again as he approached the tracks and did not see a

car, but the court held this to be incredible in view of the physical facts.

While *Virginia Ry. & Power Co.* v. *Harris*, 122 Va. 657, 95 S. E. 403, involved a collision between a street car and a wagon, the duty of exercising ordinary care to avoid injury to one's self is thus stated: "It is obvious from his version of the incident (assuming that defendant was guilty of negligence, which we do not think is shown) that plaintiff's own negligence, which continued down to the moment of the collision, if not the proximate cause of the accident, at least efficiently and concurrently contributed thereto. It was plainly the duty of the plaintiff, when he discovered the approaching car, to keep a lookout on its movement, and to so regulate his own conduct as to avoid danger of collision."

[4] The trial court in this case has applied the rule which is deducible from the cases we have cited. There have been expressions in other cases involving such injuries to persons driving vehicles in crowded streets, and such injuries occurring where county roads cross steam railroads, which may seem to be out of harmony with these cases involving pedestrians who are injured in attempting to cross street railway tracks. When a collision impends between a street car and another vehicle, the problem of both the motorman and the driver is far more difficult, the difference being that the pedestrian, in such an emergency, can generally find a safe place in which to remain, or in an instant he can step out of danger. A pedestrian, under such circumstances, knowing of the approach of the street car, with nothing to obstruct his view, and in possession of his normal faculties, can avoid the injury in most cases by stopping and by not taking the fatal

step into obvious danger. In most cases he can assure his safety by the exercise of the slightest care.

[5, 6] Another assignment of error is that the court refused to grant two instructions offered for the plaintiff. The first of these reads: "The court instructs the jury that at street intersections pedestrians have the right of way over vehicles."

That this ordinance was in effect at the time and is a valid ordinance is unquestionably true, but it does not relieve the pedestrians of the duty to exercise ordinary care to protect themselves from injury. Generally speaking, it means that at street intersections the drivers of vehicles shall not unreasonably impede the passage of pedestrians, and that between street crossings pedestrians shall not unreasonably impede the movement of vehicles. It relieves neither of the duty to exercise proper care measured by the danger. In the unqualified form presented, the instruction could only have confused the jury. While correct as an abstract proposition, it is inapplicable here and would have been misleading under the facts of this case.

[7] Another instruction was offered which directed the jury's attention to the alleged negligence of the defendant company (failure to stop the car or reduce its speed), and concluded with a direction to find for the plaintiff, if convinced of that negligence. The court properly refused this instruction, because the contributory negligence of the plaintiff which defeats the action is manifest from her own testimony.

[8] There is another assignment of error growing out of this circumstance: The plaintiff attempted to prove by a witness that the motorman of the street car asked what he had hit. The defendant moved to strike out this answer. The witness was then asked when the motorman asked that question, and this is his response:

"After myself and two other fellows started to pull her up because we asked him to back back, and he seemed to be so nervous he could not back back, and we had to take and pull her out from under the car." The attorney for the defendant then renewed his motion; the evidence was stricken out, and the plaintiff excepted. It is claimed that the evidence should have been admitted as part of the *res gestae.*

This testimony, even if admitted, was quite immaterial and could not possibly have changed the result; therefore, its exclusion does not constitute reversible error, if indeed it was error. The verdict returned, *i. e.*, for the defendant, was the only proper verdict in this case. Therefore, the judgment will be affirmed.

*Affirmed.*